Steven ARMSTRONG, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 45S03–0010–PC–564.

Supreme Court of Indiana.

May 21, 2001.

Susan K. Carpenter, Public Defender of Indiana, Chris Hitz–Bradley, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Janet L. Parsanko, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

On Petition to Transfer

DICKSON, Justice.

Steven Armstrong's murder conviction was affirmed in 1996 by the Court of Appeals in a memorandum decision. When he filed a petition for post-conviction relief in 1999, the post-conviction court applied the doctrine of laches to bar consideration of his petition. The Court of Appeals affirmed in a memorandum decision. We granted transfer, and we now consider Armstrong's appeal anew and hold that laches does not bar consideration of his petition for post-conviction relief.

The equitable doctrine of laches operates to bar consideration of the merits of a claim or right of one who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done. *Twyman v. State,* 459 N.E.2d 705, 712 (Ind. 1984). For laches to apply, the State must prove by a preponderance of the evidence that the petitioner unreasonably delayed in seeking relief and that the State is prejudiced by the delay. *Williams v. State,* 716 N.E.2d 897, 901 (Ind.1999). For post-conviction laches purposes, prejudice exists when the unreasonable delay operates to materially diminish a reasonable likelihood of successful re-prosecution. *Stewart v. State,* 548 N.E.2d 1171, 1176 (Ind.App. 1990).

Because the State had the burden of proving laches as an affirmative defense, Armstrong is not appealing from a negative judgment, and the applicable standard of review requires that we affirm unless we find that the judgment was clearly erroneous. Ind.Trial Rule 52(A); *Spranger v. State,* 650 N.E.2d 1117, 1119 (Ind.1995). This is a review for sufficiency of evidence. *Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158 (Ind.1994). Without reweighing the evidence or assessing the credibility of witnesses but rather looking only to the evidence and reasonable inferences favorable to the judgment, we will affirm if there is probative evidence to support the post-conviction court's judgment. *Williams,* 716 N.E.2d at 901; *Lacy v. State,* 491 N.E.2d 520, 521 (Ind.1986).

Armstrong does not challenge the finding that the three-year delay between the conclusion of his direct appeal and the filing of his petition for post-conviction relief was unreasonable. He contends, however, that the post-conviction evidence was insufficient to prove resulting prejudice to the State. The State's laches claim is based upon its contention that it has suffered prejudice from the delay "because

the State's eyewitness to the murder, Anthony Moton, is now outside of the jurisdiction," Br. of Appellee at 5–6, and that "[w]ithout the live testimony of Moton, the State's ability to successfully present a case against Armstrong is materially diminished." *Id.* at 8. The State also argues that other witnesses, William Riley and Claretha Smith, would not likely now provide testimony favorable to the State.

The judgment of the post-conviction court was based on the following findings:

Regarding the prejudice to the State, while Mr. Riley is available as a witness his credibility is tainted from the get-go. He's got a deal that was offered to him, so his testimony is purchased by the state. The gun and drug charges from the Feds would not be admissible as an *Ashton* offense. And it would appear that the pending case also would not be admissible as a drug charge—not pending, the one that he is currently serving time on. However, because he is serving time currently, it may well be that he is not cooperative with the state, although that's speculation on my part. It's not certainly—not something that would surprise me.

That leaves Ms. Smith, who the state has located and is available to testify, but we are talking about a substantially weaker case. It is foreseeable in a retrial that the defendant could take the stand and accuse Riley of the shooting and could attempt to implicate her in it as well—as his date as his girlfriend at the time—although not for a lengthy period of time.

I guess the strongest witness from what I've heard here today in the previous trial was the reluctant witness. There isn't anything that increases credibility other than having a friend implicate you under duress. I think that it would be extremely difficult for the state

to get a reluctant witness back from out of state. It's difficult to get a cooperating witness back oftentimes from out of state. There's a lot of paperwork that has to be completed. There's a hearing that has to occur in the other jurisdiction. The financial aspects of it aside, just the logistics of it is often difficult to achieve when you have someone who is reluctant to come back in the first place. It can be virtually impossible to accomplish that.

So based on that, I'm going to find that the case that the state is left with as a result of this missing witness is a substantially weaker case than originally presented, and therefore I'm going to find that it would be extremely difficult for the state to successfully retry the defendant, and at this point recommend to the presiding judge that the petition for postconviction relief be barred by laches.

Record at 103–05.

Armstrong argues that the post conviction court erred in finding that the State would be prejudiced in any retrial of the petitioner due to the fact that one of the State's original eyewitnesses now lives in Georgia. The State argues that it would be prejudiced because the witness now in Georgia was the State's most credible witness; that he would probably not be willing to travel to Indiana to testify; that the legal and financial difficulties in bringing a reluctant witness back to testify are significant; and that the remaining witnesses may be reluctant to testify under the changed circumstances.

Reviewing the evidence and inferences favorable to the judgment, we conclude that the State's most valuable witness, Anthony Moton, currently resides in Georgia. Moton, a friend of Armstrong, testified reluctantly in the first trial and is unlikely to willingly return to Indiana and testify

again. It would be expensive, time-consuming, and logistically difficult for the State to bring him back to testify in Indiana. We find no indication, however, that the State attempted to determine whether Moton would voluntarily return and testify. We also note that both Georgia and Indiana have adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. *See* Ga.Code Ann. §§ 24–10–90 to –97 (Harrison 1998); Ind.Code §§ 35–37–5–1 to –9 (1998). A second eyewitness, William Edward Riley, is available and is currently serving a sixty year prison term in Indiana for a conviction unrelated to petitioner's case. In Armstrong's trial, Riley was given immunity and the state dismissed pending criminal charges in exchange for his cooperation at petitioner's trial. The State now has nothing further to offer Riley for his cooperation. The State also argues that Riley's testimony is not as reliable as Moton's because Armstrong defended on the theory that Riley, not Armstrong, was the actual shooter. A third eyewitness, Claretha Takesia Smith, is available. She was dating Riley when the offense was committed, but stopped dating him because of the shooting and has not seen him since. The State contends that Smith will likely not cooperate as she no longer has a motive to protect Riley from Armstrong's attempt to shift suspicion. The State's argument is thus that, as to Riley and Smith, it should be inferred from the changed circumstances that they are likely to testify differently than they did at the original trial. The State did not present evidence establishing any change in their versions, and we are reluctant to find these inferences reasonable. To conclude otherwise would potentially elevate the availability of laches to bar consideration of most petitions for post-conviction relief in prosecutions originally based substantially upon testimony obtained pursuant to plea agreement.

■ Even if the State had presented evidence that one or more of the witnesses would now testify contrary to their trial testimony and adverse to the prosecution, we seriously question whether such circumstances should properly constitute the element of prejudice required for the laches defense. While this issue is not directly before us, we have observed, albeit in a different context, that the element of prejudice is not necessarily shown by an unfavorable result but rather is determined by whether the prejudice-claiming party's "opportunity for a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled." *Games v. State,* 535 N.E.2d 530, 535–36 (Ind.1989).

Even if we were to consider the extent that there may exist a diminished likelihood of successful reprosecution by reason of Moton's location and a change in the motivations of Riley and Smith to testify consistent with their prior testimony, we find no evidence that these factors did not also exist when the direct appeal concluded. Thus, the alleged prejudice claimed by the State to support its defense of laches is neither attributable to nor materially enhanced by Armstrong's three-year delay in filing his petition for post-conviction relief.

Notwithstanding the evidence favorable to the judgment of the post-conviction court, and all resulting reasonable inferences, we conclude that the judgment is not supported by sufficient probative evidence. The post-conviction court erred in applying the State's defense of laches to bar consideration of the claims presented in Armstrong's petition. We reverse the judgment of the post-conviction court and remand this cause for further proceedings

with respect to the petition for post-conviction relief.

SHEPARD, C.J., and SULLIVAN, BOEHM, and RUCKER, JJ., concur.